**UNITED STATES DISTRICT COURT**
                  **FOR THE DISTRICT OF NEW HAMPSHIRE**


**EnergyNorth Natural Gas, Inc.**

    v.                                    Case Nos. 00-cv-430-PB

**Certain Underwriters
at Lloyd's, London, et al.**


                    **ORDER CERTIFYING QUESTIONS TO
                    THE NEW HAMPSHIRE SUPREME COURT**


    This is an environmental insurance coverage case. EnergyNorth Natural Gas, Inc. ("ENGI") originally sued several different insurance companies to recover costs that it incurred in the past and expects to incur in the future in responding to environmental damage caused by the operation of a manufactured gas plant ("MGP") by its predecessors at a site in Manchester, New Hampshire.  ENGI has since settled its claims against all of the insurance company defendants except American Re-Insurance Company ("American Re").  American Re provided third level excess liability insurance coverage to one of ENGI's predecessors from January 1, 1972 until January 1, 1973.

The parties have entered into stipulations that have resolved many of the legal and factual issues presented by ENGI's coverage claim. Because the issues that remain turn on important and unresolved questions of New Hampshire law, I certify the questions that appear at the end of this order to the New Hampshire Supreme Court. Before stating the certified questions, I summarize the relevant facts and provide an overview of the legal milieu in which the questions arise.

## I. **FACTUAL BACKGROUND**[1]

The Manchester MGP began operating in 1852 and ceased operations in or about 1952. On March 13, 2000, the New Hampshire Department of Environmental Services notified ENGI of the existence of pollution damage at the Manchester site and required it to undertake investigative and remedial action. The investigation and remedial action is ongoing and a final Remedial Action Plan has not yet been implemented.

ENGI brought this action based in part on N.H. Rev. Stat. Ann. § 22-9 ("RSA § 491: 22-9") against Certain Underwriters at

---

[1] I draw the facts from the parties' May 4, 2006 joint statement of relevant facts (Doc. No. 215-1).

Lloyd's and Certain London Market Insurance Companies ("London"), Century Indemnity Co. ("Century"), CGU Insurance Company ("CGU"), Chicago Insurance Company ("Chicago"), Associated Electric and Gas Insurance Services, Ltd. ("AEGIS"), and American Re (collectively, "Defendant Insurance Companies").  The various policies issued by the Defendant Insurance Companies that ENGI placed at issue in this Manchester action first became effective as early as 1939 and continued until 1986.

ENGI has settled its claims at Manchester with all of the Defendant Insurance Companies except American Re.  Some or all of the settlements include releases of claims that are broader than the Manchester site cleanup at issue in this action.

ENGI asserted, and American Re does not contest, that the pollution damage it has been required to investigate and clean up was predominantly caused by inadvertent leaks and spills during all the years of MGP operations at the site, particularly from under gas holders and associated piping; and that tar, which is now considered to be a "hazardous waste," discharged to the environment, continuously migrated through soil and groundwater at the site, causing continuous property damage as it moved. American Re has stipulated that the contamination at or emanating

from the Manchester site was caused by fortuitous events and therefore arose from an "occurrence" within the meaning of the American Re insurance policy. Both parties agree that property damage was continuous beginning with the commencement of operations at the Manchester site and that the evidence does not permit a determination of precisely when specific property damage took place.

## **Provisions of the American Re Policy**

American Re issued a policy of excess liability insurance covering the period January 1, 1972 through January 1, 1973. The American Re policy is a third-layer excess policy containing a limit of liability of $2,000,000 in excess of $3,000,000 of underlying excess coverage. The American Re policy is an indemnity-only policy. The American Re policy does not contain a duty to defend.

ENGI and American Re stipulated to the terms and conditions of the American Re policy. A copy of that Stipulation is attached hereto as Exhibit 1. The American Re policy consists of a Declarations page (AmRe 0007, included in Exhibit A to the Stipulation), portions of an underlying policy issued by The Home Insurance Company (AmRe 00052 – 00059, included in Exhibit A to

the Stipulation), and a three-page Terms and Conditions sheet (Exhibit B to the Stipulation).  The Declarations page and the three-page Terms and Conditions sheet contain the following provisions:

## DECLARATIONS

\*   \*   \*

2. EFFECTIVE DATE: 01/01/72; EXPIRATION DATE: 01/01/73

3. DESCRIPTION OF COVERAGE HEREUNDER: Excess Umbrella Personal Injury Liability, Property Damage Liability and Advertising Liability.

4. UNDERLYING INSURANCE: (a) The Home Insurance Company Policy No. HEC4344341, expiring 1/1/73 for $1,000,000 each occurrence and annual aggregate where applicable in excess of underlying insurance as shown in that policy or $10,000 for uninsured exposures. (b) Various companies for $2,000,000 each occurrence and annual aggregate where applicable in excess of Item 4 (a) above.

5. LIMIT(S) OF COVERAGE HEREUNDER: $2,000,000 each occurrence and annual aggregate where applicable in excess of $3,000,000 and underlying insurance as shown in Item 4 (a) and (b) above.

## TERMS AND CONDITIONS

**INSURING AGREEMENT**

1. The Company hereby indemnifies the Insured against ultimate net loss in excess of and arising out of the hazards covered and as

>    defined and in excess of the underlying insurance as shown in Item 4 of the Declarations (hereinafter referred to as "underlying insurance") but only up to an amount not exceeding the limit(s) shown in Item 5 of the Declarations.
>
> 2.  Except as may be inconsistent with this Certificate, the coverage provided by this Certificate shall follow the insuring agreements, conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this Certificate, including any change by endorsements. The Company shall be notified of any change in coverage or premium in such underlying insurance and copies thereof shall be furnished to the Company upon request.
>
>                       *   *   *
>
> 5.  If aggregate limits are specifically stated in Item 4 and 5 of the Declarations, this Certificate will apply in excess of reduced underlying insurance provided such reduction in the underlying insurance is solely the result of accidents or occurrences happening after the inception date of this Certificate. The Insured shall give the Company written notice as soon as possible of any reduction or exhaustion of such aggregate limit in the underlying insurance.
>
>                     **LOSS PAYABLE**
>
> 11. The Company's obligation to pay any ultimate net loss and costs with respect to any accident or occurrence falling within the terms of this Certificate shall not attach until the amount of the applicable underlying

>    limit has been paid by or on behalf of the
>    Insured on account of such accident or
>    occurrence. . . .
>
>                    *     *     *
>
> 13. Ultimate net loss, as used herein, shall be
>     understood to mean the sums paid in
>     settlement of losses for which the Insured is
>     liable after making deductions for all
>     recoveries, salvages and other insurances
>     (other than recoveries under the underlying
>     insurance policies of coinsurance, or policies
>     specifically in excess hereof), whether
>     recoverable or not, and shall exclude all "Costs."
>
>                    *     *     *
>
> **TERM**
>
> 19. This Certificate applies only to accidents or
>     occurrences happening between the effective
>     and expiration dates shown in Item 2 of the
>     Declarations, unless otherwise cancelled.

As set forth in Paragraph 2 of the Terms and Conditions sheet quoted above, the American Re policy incorporates certain provisions of an underlying policy, which the parties have stipulated to be Home policy No. HEC 43 44341.  The Home policy contains the follow provisions:

>    I.   COVERAGE
>
>    The Company hereby agrees, subject to the limitations,
>    terms and conditions hereinafter mentioned, to
>    indemni[f]y the Insured for all sums which the Insured
>    shall be obligated to pay by reason of the liability .
>    . . imposed upon the Insured by Law, . . . for damages,
>    direct or consequential, and expenses, all as more

-7-

fully defined by the term "ultimate net loss" on account of . . . Property Damage . . . caused by or arising out of each occurrence or happening anywhere in the world.

*   *   *

THIS POLICY IS SUBJECT TO THE FOLLOWING DEFINITIONS:

5.   OCCURRENCE

The term "occurrence" wherever used herein shall mean an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period. All such exposure to substantially the same general conditions arising at or emanating from one premises location shall be deemed one occurrence.

THIS POLICY IS SUBJECT TO THE FOLLOWING CONDITIONS:

L. OTHER INSURANCE

If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this Policy, other than Insurance that is in excess of the Insurance afforded by this Policy, the Insurance afforded by this Policy shall be in excess of and shall not contribute with such other Insurance, either as double Insurance or otherwise. Nothing herein shall be construed to make this Policy subject to the terms, conditions, and limitations of other Insurance.

II.   **LEGAL BACKGROUND**

In <u>EnergyNorth Natural Gas, Inc. v. Underwriters at Lloyd's</u>, 150 N.H. 828 (2004), the New Hampshire Supreme Court determined

that the continuous migration of toxic waste can trigger coverage under multiple insurance policies covering different periods if the policies include the type of coverage terms that were then before the court.  See id. at 835-36, 838, 840-41.  The parties agree that the costs that ENGI is seeking to recover in the present case were incurred in responding to the continuous migration of toxic waste that was ongoing while its policy was in effect.  They also agree that American Re's policy uses language that can result in coverage being triggered by the migration of toxic waste during the policy period.  Finally, because the parties also agree that the evidence will not permit a determination as to when specific property damage occurred, questions arise as to how liability for any recoverable costs should be apportioned in determining whether American Re's coverage obligation has been triggered.

   The New Hampshire Supreme Court has not yet addressed the specific allocation questions presented by this case, and courts in other jurisdictions that have confronted similar questions have resolved them in different ways.  See generally Thomas M. Jones and Jon D. Hurwitz, An Introduction to Insurance Allocation Issues in Multiple-Trigger Cases, 10 Vill. Envtl. L.J. 25 (1999).

If American Re's liability to ENGI is joint and several,[2] I will have to determine what effect, if any, ENGI's prior settlements with other insurers have on American Re's liability. Alternatively, if American Re's liability is merely several, I will have to determine how to allocate any recoverable costs among American Re and any other responsible parties.

The case also presents an important and unresolved legal question as to how attorneys fees and costs should be awarded under N.H. Rev. Stat. Ann. § 491:22-b ("RSA § 491:22-b"). ENGI

---

[2] Most courts that have found insurers joint and severably liable in such circumstances have relied on policy language that obligates the insurer to pay "all sums which the insured shall be obligated to pay by reason of the liability . . . ." Although the American Re policy does not contain this language, the policy immediately underlying the American Re policy does and the American Re policy provides that
> [e]xcept as may be inconsistent with this certificate, the coverage provided by this certificate shall follow the insuring agreements conditions and exclusions of the underlying insurance (whether primary or excess) immediately preceding the layer of coverage provided by this certificate . . . .

Exhibit B, Joint Statement of Facts (Doc. No. 215-7). American Re argues that the "all sums" language in the underlying policy cannot be considered a part of its policy because it is inconsistent with the policy's definition of "ultimate net loss." I find this argument unpersuasive and decline to certify it as a separate unresolved question of New Hampshire law. Nevertheless, if the New Hampshire Supreme Court deems it advisable to address American Re's argument, I would, of course, welcome any guidance the court can provide.

has exacted stipulations from American Re that resolve many of the issues on which its coverage claim depends. It argues that these agreements make it a prevailing party under RSA § 491:22-b and thus entitle it to an award of fees and costs. American Re responds by claiming that, at most, it owes ENGI a contingent indemnification obligation that is not triggered unless and until ENGI has incurred sufficient recoverable costs to entitle it to an indemnification payment. The resolution of these competing arguments turns on an unresolved question of New Hampshire law.[3]

### III. CERTIFIED QUESTIONS

For the reasons set forth in this order, I certify the following questions to the New Hampshire Supreme Court:

> 1. When an insurance policy is triggered by the continuous migration of toxic waste that began before coverage commenced and continued after coverage ended, and the evidence will not permit a determination as to when specific property damage occurred, is the insurer jointly and severably liable for all of the resulting

---

[3] These unresolved questions of New Hampshire law also potentially affect future proceedings in several other cases in this district, including EnergyNorth v. Century Indemnity Co., Dkt. No. CV-99-502-JD (Dover MGP case) (coverage determined but damages unresolved); EnergyNorth v. Century Indemnity, et al., Dkt. No. CV-99-049-JD (Nashua MGP case) (coverage determined but damages unresolved); and EnergyNorth v. Certain Underwriters at Lloyd's London, et al., Dkt. No. CV-01-372-B (Keene MGP case).

property damage up to the limits of the policy?

2.   If the answer to question 1 is no, how should the insurer's share of any liability be determined?

3.   If the answer to question 1 is yes, what is the effect of prior settlements with other insurers?

4.   Does a policy holder become immediately entitled to an award of costs and reasonable attorneys' fees under RSA § 491:22-b by obtaining rulings against an excess insurer that will require the insurer to indemnify the policy holder if it incurs enough recoverable costs in the future to reach the coverage provided by the excess insurer?


SO ORDERED.

                                        /s/Paul Barbadoro
                                        Paul Barbadoro
                                        United States District Judge

September 28, 2006

cc:   Counsel of Record